Receipt number 9998-5451026

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RAYTHEON COMPANY,

     Plaintiff,

v.

THE UNITED STATES,

     Defendant.

No.  **19-883** C

## COMPLAINT

Plaintiff Raytheon Company ("Raytheon"), through undersigned counsel, files its Complaint against the United States (the "Government").  For its Complaint, Raytheon alleges as follows:

## INTRODUCTION

1.    This action involves an improper attempt by the Government, acting through the U. S. Army Contracting Command - Redstone (the "Army" or "Government"), to acquire rights in Raytheon's proprietary information without observing the requirements of the applicable laws, regulations, and terms of the underlying contracts.

2.    In 2009 and 2014, respectively, the Army awarded two contracts to Raytheon for engineering services in support of the Patriot weapon system for both Foreign Military Sales ("FMS") customers and the Army ("Patriot Engineering Services Contracts").  The Patriot Engineering Services Contracts incorporated Contract Deliverable Requirement Lists ("CDRLs") that instructed Raytheon to submit and maintain a listing of all of the sources used by Raytheon to procure subcontracted items in support of the Patriot weapon system.

3.    This sources list is referred to as the "Source/Vendor List/Foreign List" (hereafter the "Vendor Lists") and governed by Data Item Description ("DID") DI-MGMT-80894A.  Under

the Department of Defense ("DoD") Standardization Directory (SD-1), DI-MGMT-80894A is

assigned to the "MGMT" or Management area, which is described as follows:

> This AREA covers data required by the Government to manage,
> provide visibility, and enforce contractual requirements in the form
> of record keeping or deliverable products concerning project
> management milestones, technique, status (excluding financial and
> technical), milestones, problems, plans, and other data not
> technically or financially oriented.

DoD Standardization Directory (SD-1), at ix (emphasis added).

4.      DI-MGMT-80894A specifically required Raytheon to submit a complete listing of

all sources used in procuring any subcontracted items "as a means for the government to track

parts selection, qualification, and identification of parts."   DI-MGMT-80894A, Block 3

("Description/Purpose").   DI-MGMT-80894A, therefore, required Raytheon to submit data

required by the Government to manage and oversee the contract.

5.      10 U.S.C. § 2320 requires the Secretary of Defense to establish regulations that

"define the legitimate interest of the United States and of a contractor . . . in technical data

pertaining to an item or process."  10 U.S.C. § 2320 provides the basis for the allocation of rights

in noncommercial technical data scheme set forth in the DoD Federal Acquisition Regulation

Supplement ("DFARS") 252.227-7013 contract clause.   DFARS 252.227-7013 governs the

allocation of rights in noncommercial technical data pertaining to items, components and processes

developed under a government contract, or noncommercial technical data created under a

government contract that do not pertain to items, components, and processes.   Under DFARS

252.227-7013, the Government's rights in technical data depend on the source of funding used for

development.   The Government typically obtains "unlimited rights" in technical data developed

exclusively with Government funds, "Government purpose rights" ("GPR") in technical data

developed with mixed funding, and "limited rights" in technical data developed at private expense.

DFARS 252.227-7013(b).   Under DFARS 252.227-7013(f)(1), if a contractor delivers noncommercial technical data to the Government with less than unlimited rights, it must mark the technical data with one of the restrictive legends prescribed by that clause.  Any other markings on technical data are considered nonconforming pursuant to DFARS 252.227-7013(h)(2).

6.     10 U.S.C. § 2321 sets forth the statutorily-required procedures for challenging the validity of a contractor's restrictive markings on technical data.   These statutorily-required procedures are incorporated into the contract clause at DFARS 252.227-7037.  Accordingly, when a contractor delivers technical data to the Government with restrictions on the Government's rights to use or disclose the data, the contracting officer must follow the procedures set forth in 10 U.S.C. § 2321, as implemented in DFARS 252.227-7037, to challenge the validity of the asserted restrictions.

7.     DFARS 252.227-7013 and 252.227-7037 only apply to technical data, which is defined as "recorded information . . . of a scientific or technical nature . . . [that] <u>does not include . . . data incident to contract administration, such as financial and/or management information</u>." DFARS 252.227-7013(a)(15) (emphasis added).  Unlike technical data, the DFARS does not grant the Government any rights in a contractor's management information, such as the Vendor Lists, nor does it prescribe any restrictive markings or legends that contractors must use in marking such data.  Rather, a contractor's trade secrets and confidential or proprietary financial or commercial information are protected from disclosure by the federal Trade Secrets Act, 18 U.S.C. § 1905, and Exemption 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(4).

8.     The Patriot Engineering Services Contracts incorporated several standard technical data rights clauses, including most notably, DFARS 252.227-7013 and 252.227-7037.

9.      Consistent with the stated purpose, content and function of the Vendor Lists under DI-MGMT-80894A, Raytheon properly treated the Vendor Lists as proprietary management information, rather than technical data, and affixed proprietary markings on the Vendor Lists in order to protect the lists against misuse or improper public disclosure.

10.     The Army objected to Raytheon's use of proprietary markings on the Vendor Lists, claiming instead that the Vendor Lists are technical data.  And, despite the procedures outlined in 10 U.S.C. § 2321, as implemented in DFARS 252.227-7037, regarding challenges to the validity of restrictive markings on technical data, the Army directed Raytheon to remove its proprietary markings from the Vendor Lists and replace them with the markings set forth in DFARS 252.227-7013(f).

11.     When Raytheon refused, the Army issued a contracting officer's final decision ("COFD") stating that Raytheon's use of proprietary markings on the Vendor Lists was improper because the Vendor Lists are technical data pertaining to the Patriot weapon system in which the Government is entitled to a GPR license.  The COFD further instructed Raytheon to remove and replace the nonconforming markings with GPR markings within 90 days and, to the extent that Raytheon delivers future Vendor Lists with nonconforming markings, advised that the Army will disapprove of such deliveries and may remove, correct or ignore the nonconforming markings. The COFD also stated that if Raytheon does not deliver the Vendor Lists with GPR markings, that the Government may elect to withhold 10% of the total contract price until such time that Raytheon delivers the Vendor Lists with GPR markings.

12.     Raytheon files this action challenging the COFD.

## NATURE OF THE ACTION

13.     This Complaint constitutes a timely appeal of the Government's claims, as articulated in the COFD.  This Complaint seeks *de novo* review of the claims set forth in the COFD pursuant to 41 U.S.C. § 7104.

14.     The Complaint seeks judgment on declaratory and breach of contract actions to remedy the Army's improper determination that the Vendor Lists are technical data, demand for Raytheon to change its proprietary markings on the Vendor Lists, assertion that it may remove, change, or ignore any restrictive markings on the Vendor Lists, and determination that it is entitled to a GPR license in the Vendor Lists.

## PARTIES

15.     Raytheon is a Delaware corporation, with its principal place of business located at 870 Winter Street, Waltham, Massachusetts.  Raytheon develops technologically advanced and integrated products, services, and solutions through five primary lines of business:  (a) integrated defense systems; (b) intelligence, information and services; (c) missile systems; (d) space and airborne systems; and (e) global business services.

16.     Defendant is the United States acting through the Army.

## JURISDICTION AND STANDING

17.     On June 21, 2018, the contracting officer issued the COFD under the Contract Disputes Act ("CDA"), 41 U.S.C. § 7103(a)(3), stating, *inter alia*, that the proprietary markings Raytheon placed on the Vendor Lists were improper and directing Raytheon to remove the proprietary markings and replace them with restrictive markings that would provide the Government with a GPR license in the Vendor Lists.  The contracting officer further advised Raytheon that the Government may remove, correct, or ignore the markings on any future data

deliveries and withhold 10% of the total contract price until such time as the Government receives the Vendor Lists with GPR markings.

18.     This Court has jurisdiction over the claims set forth in this Complaint that arise under the Patriot Engineering Services Contracts pursuant to 28 U.S.C. § 1491(a)(2), which states that this Court:

> [S]hall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41, including a dispute concerning . . . rights in tangible or intangible property . . . and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

19.     28 U.S.C. § 1491(a)(1), which states that this Court "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress . . . in cases not sounding in tort," further provides this Court jurisdiction over Raytheon's statutory claim under 10 U.S.C. § 2321.

20.     Raytheon has standing to file this action because this action involves a contract dispute between Raytheon and the Army regarding the validity of the proprietary markings on the Vendor Lists submitted by Raytheon under the Patriot Engineering Services Contracts, the Army's failure to adhere to the procedural requirements of 10 U.S.C. § 2321 and DFARS 252.227-7037 for challenging Raytheon's markings, and the Army's determination that it is entitled to a GPR license in the Vendor Lists.

## PREVIOUS LAWSUITS

21.     Raytheon has not initiated other lawsuits in either state or federal court dealing with the same or similar facts involved in this action.

## BACKGROUND

### A.      Patriot Engineering Services Contracts

22.      Since at least 2009, Raytheon has performed engineering services in support of the Patriot weapon system for both FMS customers and the Army.  The Army awarded the first of these contracts, Contract No. W31P4Q-09-C-0057, to Raytheon on January 30, 2009.  The contract included fixed-price, level-of-effort ("FFP-LOE") and cost-plus-fixed-fee ("CPFF") line items and had a five-year period of performance.

23.      Raytheon was awarded a follow-on contract, Contract No. W31P4Q-14-C-0097, on August 15, 2014, for continued modernization and integration of the Patriot weapon system with other systems that provide air and missile defense capabilities.  Like the initial contract, the follow-on contract included FFP-LOE and CPFF line items.  The contract had a base period through January 31, 2015, and three one-year options.

### B.      Data Rights Provisions

24.      The Patriot Engineering Services Contracts incorporated standard DFARS clauses regarding the Government's rights in technical data under the Contracts, including most notably, DFARS 252.227-7013, Rights in Technical Data - Noncommercial Items, and DFARS 252.227-7037, Validation of Restrictive Markings - Technical Data.  These clauses only apply to "technical data," which is defined as "recorded information, regardless of the form or method of the recording, of a scientific or technical nature (including computer software documentation).  The term does not include . . . data incidental to contract administration, such as financial and/or management information."  DFARS 252.227-7013(a)(15) (emphasis added).

25.      DFARS 252.227-7013(b) establishes the Government's rights in technical data pertaining to items, components or processes developed under a Government contract, as well as technical data created under a Government contract that does not require the development,

manufacture, construction, or production of items, components, or processes.  The scope of the Government's rights is generally determined by the source of funds used to develop the item, component, or process to which the technical data pertain, or the source of funds used to create the technical data.   Under this scheme, the Government obtains:   (a) "unlimited rights" in noncommercial technical data developed exclusively with Government funds; (b) "government purpose rights" in noncommercial technical data developed with mixed funding; and (c) "limited rights" in noncommercial technical data developed exclusively at private expense.   The Government and the contractor also may modify the foregoing rights by mutual agreement.

26.     Among other things, DFARS 252.227-7013(e) and (f) require contractors to identify and mark any noncommercial technical data delivered to the Government with restrictions on the Government's ability to "use, modify, reproduce, release, perform, display, or disclose technical data."  In addition, DFARS 252.227-7013(f) prescribes the exact format and content of the restrictive markings that may be used in marking technical data.  Technical data markings that are not in the format prescribed by the clause are considered nonconforming markings under DFARS 252.227-7013(h)(2).

27.     DFARS 252.227-7013 does not grant the Government rights in financial, management, or other nontechnical data, nor does it require contractors to identify or mark any such data that is delivered to the Government with restrictions on the Government's right to use or disclose such data.  *Cf.* 10 U.S.C. § 2320(a) ("[t]he Secretary of Defense shall prescribe regulations to define the legitimate interest of the United States and of a contractor or sub-contractor in technical data pertaining to an item or process").

28.     If the contracting officer questions the validity of any restriction asserted by a contractor with respect to noncommercial technical data, DFARS 252.227-7037 sets forth the

procedures by which the contracting officer may review and, if warranted, challenge the validity of the restriction.  As a first step, DFARS 252.227-7037(d)(1) provides that a contracting officer may request that the contractor furnish a written explanation for any restrictions asserted by the contractor on the right of the Government or others to use technical data.  If, after reviewing the information, the contracting officer determines that (a) reasonable grounds exist to question the current validity of the marking, and (b) continued adherence to the marking would make impracticable the subsequent competitive acquisition of the item, component, or process to which the technical data relates, DFARS 252.227-7037(d)(2)-(3), consistent with 10 U.S.C. § 2321, then provides that the contracting officer may formally challenge the validity of the asserted restrictions.  The steps for formally challenging the validity of the asserted restrictions are set forth at 10 U.S.C. § 2321 and DFARS 252.227-7037.

29.     The Patriot Engineering Services Contracts also incorporated CDRLs E058 and A024, both of which were issued under the authority of DID DI-MGMT-80894A.  CDRLs E058 and A024 required Raytheon to submit a complete listing of all sources used by Raytheon in procuring any subcontracted item (e.g., the Vendor Lists) as "a means for the government to track parts selection, qualification, and identification of parts."    DI-MGMT-80894A, Block 3 ("Description/Purpose").

30.     DIDs, like DI-MGMT-80894A, were historically approved and given clearance by the Office of Management & Budget ("OMB") and the Acquisition Management System and Data Requirements Control List ("AMSDL") Clearance Office.  They describe the purpose of each data item and define its content and format requirements.  DoD 5010.12-M (May 1993), § C3.3.1. According to DoD 5010.12-M, "[a]ll data requirements to be included in a solicitation or contract, with the exception of data acquired by any clauses of the FAR or the DFARS . . . must be selected

from the listing of OMB-cleared data acquisition documents (i.e., military specifications, military standards, and the DIDs in the AMSDL, DoD 5010.12-L)."  *Id.* § C2.3.3.  These specifications, standards, and DIDs are now indexed in the Acquisition Streamlining and Standardization Information System.  *See* DFARS Procedures, Guidance, and Information 211.201; MIL-STD-963C.

31.     DIDs, like DI-MGMT-80894A, provide "a complete description of the data content, format and intended use without reference to other documents."  MIL-STD-963C, § 4.2.1. DIDs are structured to facilitate the tailoring of requirements for a specific acquisition, which is normally done by referencing the appropriate DID paragraph identifiers in Block 16 of the CDRL for deletion or application.  Agencies may delete, but they may not add requirements to DIDs.  *See* MIL-STD-963C, §§ 3.22, 4.3.4.

32.     Relevant here, "[e]ach DID and its corresponding source document (as applicable) is assigned to the functional area that most nearly describes the use of the required data."  DoD 5010.12-L, at 3 (Apr. 1, 1997).  In this case, DI-MGMT-80894A is assigned to the "MGMT" or Management area, which is described, as follows:

> This AREA covers data required by the Government to manage, provide visibility, and enforce contractual requirements in the form of record keeping or deliverable products concerning project management milestones, technique, status (excluding financial and technical), milestones, problems, plans, and other data not technically or financially oriented.  Documents related to management policies and concepts for particular programs or projects include Master Plan, Procedures for Determining Responsibility of Prospective Contractors, and various progress Status Reports, planning documents, and Program Management Plan. This AREA also includes documents related to the establishment and maintenance of Government property, i.e., status of condition, deficiency, and inventory. Examples of related documents are GFI Deficiency Report, Support Equipment Delivery, Schedule/Delinquency Report, and Defective Material Report.

DoD Standardization Directory (SD-1), at ix (emphasis added).

33.     DI-MGMT-80894A states, *inter alia*, that a listing of all sources used by the prime contractor in procuring any subcontracted item "is to be compiled from contractor invoices, purchase orders, etc., . . . and shall include only contractor, subcontractor, and vendor items." It further states that the list shall include part numbers, name and address of the original manufacturer, the Commercial and Government Entity code, and specification and source controlled items, if applicable. As noted above, the stated purpose of the listings are to provide a "means for the government to track parts selection, qualification, and identification of parts." DI-MGMT-80894A, Block 3 ("Description/Purpose").

**C.      Contract Performance**

34.     During contract performance, Raytheon submitted Vendor Lists that identified the suppliers Raytheon used to support the Patriot Engineering Services Contracts. The Vendor Lists reflected Raytheon's sourcing decisions generated through its proprietary purchasing system processes. These proprietary decisions reflect Raytheon's selection of suppliers for parts and materials, many of which are not unique to the Patriot weapon system, to produce products throughout the enterprise.

35.     Most of the entries in the Vendor Lists were also developed at private expense, which under DFARS 252.227-7013(a)(8), means "development was accomplished entirely with costs charged to indirect cost pools, costs not allocated to a government contract, or any combination thereof," because most of Raytheon's work in creating the content for the Vendor Lists was charged to indirect cost pools.

36.     Consistent with the requirements of CDRLs E058 and A024, and the instructions the Army incorporated into the contract, Raytheon submitted Vendor Lists to the Army between July 16, 2013, and July 17, 2014, respectively, under Contract No. W31P4Q-09-C-0057. The first

of these submittals, E058-001, included Raytheon export control warnings and proprietary markings:



Copyright 2013 Raytheon Company.
FOIA Exemption 5 USCS § 552 (b) (4) Applies

Distribution Statement E. Distribution authorized to DOD Components only, Proprietary Information, 16 July 2013. Other requests shall be referred to Project Manager, PEO Missiles and Space, ATTN: SFAE-MSLS-LT-PC, Bldg 5250, Martin Road Redstone Arsenal, AL 35898-8000.

WARNING: This document contains technical data whose export is restricted by the Arms Export Control Act (Title 22 U.S.C. Sec 2571, et seq.) or the Export Administration act or the Export Administration act of 1979, as amended, Title 50, U.S.C., App. 2401 et seq. Violation of these export laws are subject to severe criminal penalties. Disseminate in accordance with provisions of DOD Directive 5230.25.

This document contains Proprietary Data or information pertaining to items or components, or processes, or other matter developed or acquired at the private expense of the Raytheon Company and is restricted to use only by persons authorized by Raytheon in writing to use it. Disclosure to unauthorized persons would likely cause substantial competitive harm to Raytheon's business position. Neither said document nor said technical data or information shall be furnished or disclosed to or copied or used by persons outside Raytheon without the express written approval of Raytheon

**Raytheon Proprietary**
**Competition Sensitive**

37. The Army did not comment or object to E058-001.

38. On or about February 20, 2015, Raytheon submitted the first of the Vendor Lists under Contract No. W31P4Q-14-C-0093. Consistent with the instructions set forth in the contract, the submittal, A024-001a, contained the following export control warnings and proprietary markings:

> Distribution Statement E: <u>Distribution authorized to DoD Components only, Proprietary Information</u>, 01/07/2015. Other requests shall be referred to [sic] Project Manager, PEO Missiles and Space, ATTN: SFAE-MSLS-LT-PC, Bldg 5250, Martin Road, Redstone Arsenal, AL 35898-8000.

> WARNING - This document contains technical data whose export is restricted by the Arms Export Control Act (Title 22, U.S.C. Sec 2751, et seq) or the Export Administration Act of 1979, as amended, Title 50, U.S.C., App. 2401 et seq. Violations of these export laws are subject to severe criminal penalties. Disseminate in accordance with provisions of DoD Directive 5230.25.

CDRL A024-001a (emphasis added).

39.     The Army reviewed and approved A024-001 without exception or objection on March 16, 2015.

40.     On June 9, 2015, Raytheon submitted A024-001a to the Army with the same distribution statement export control warning.

41.     On July 13, 2015, the Army disapproved Raytheon's submission of A024-001a.

42.     Raytheon responded to the Army by letter dated August 20, 2015, pointing out that, according to DI-MGMT-80894A, the information was classified as "management" data, and therefore, did not fall within the definition of "technical data" as set forth in DFARS 252.227-7013.   Raytheon explained that the rights the Government obtains in technical data under the DFARS do not apply to management information submitted under CDRL A024.   Raytheon further explained that, consistent with this understanding, it would delete the Distribution Statement E legend and export control warnings from its A024 submittals and add the following legend to them:

> RAYTHEON COMPANY PROPRIETARY DATA
> Information contained herein is proprietary to Raytheon Company, is submitted in confidence, and is privileged and exempt from disclosure by the U. S. Government under paragraph (b) of the Freedom of Information Act (5 USC 552) and subject to 18 USC 1905.

43.     Raytheon thereafter submitted two additional Vendor Lists, A024-002 and A024-003, to the Army on August 25 and November 28, 2016, respectively.   Each of these submittals contained the "RAYTHEON COMPANY PROPRIETARY DATA" legend, shown above.

44.     By letter dated September 20, 2016, the Army responded to Raytheon's use of the "RAYTHEON COMPANY PROPRIETARY DATA" legend, asserting that the data submitted in accordance with DI-MGMT-80894A was technical data, notwithstanding the Government had previously classified it as "MGMT" (or Management) data.   To support its novel interpretation, the Army argued that Raytheon had included essentially the same information on various drawings, which it had submitted to the Army without restriction, and that Government employees

and contractors required the information about parts to fulfill government contracts.  The Army concluded its letter by instructing Raytheon to remove "within sixty (60) days, as a nonconforming marking under DFARS 252.227-7013(h)(2), the 'restrictive' 'Raytheon Company Proprietary Data' legend from the technical data submitted for DI-MGMT-80894A and resubmit the data."

45.     On November 9, 2016, Raytheon once again challenged the Army's notion that the information submitted in accordance with DI-MGMT-80894A was technical data, rather than management information.  In response to the Army's assertion that Raytheon had submitted essentially the same information on Source Control Drawings, Vendor Item Control Drawings, and Procurement Control Drawings, Raytheon noted that the parts on those drawing constituted a mere 8% of the parts included on the Vendor Lists.  Raytheon further noted that it was under no obligation to diminish its competitive advantage by making its Vendor Lists available to its competitors, pointing out that the Vendor Lists were intended for internal Government purposes only and not for reprocurement purposes.  Finally, Raytheon stated that the Vendor Lists qualified as confidential commercial information subject to protection from disclosure under FOIA Exemption 4.

46.     Approximately five months later, on March 2, 2017, the Army once more claimed the information provided in accordance with CDRL A024 was technical data and directed Raytheon to remove the purportedly nonconforming restrictive markings from its submittals within 60 days.  The Army further stated that, failing this, it would remove the markings at Raytheon's expense, disapprove future submittals, and withhold 10% of the total contract price until such time as the Government received the required data with proper markings.

47.     On June 21, 2018, the contracting officer issued a COFD stating that the contracting officer had, *inter alia*, made the following findings and determinations:

a.     The Vendor Lists required by DI-MGMT-80894A are technical data.

b.     Raytheon is required to remove the purportedly nonconforming markings from its submittals and to replace them with the restrictive markings specified in DFARS 252.227-7013(f)(2) for GPR.

c.     Raytheon is required to mark the Vendor Lists and any other technical data in which the Government has acquired a GPR license with an expiration date for such restriction.

d.     The Government would disapprove all future submittals required by DI-MGMT-80894A with similar proprietary markings and may withhold 10% of the total contract price until such time as the Army received the data items with proper markings.

In sum, despite the fact that Raytheon was never provided an opportunity to make a technical data rights assertion regarding the Vendor Lists because the Vendor Lists were historically not treated as technical data, and the contracting officer never assessed whether the Vendor Lists were proprietary Raytheon data developed exclusively at private expense subject to limited rights, the contracting officer determined that the proprietary markings asserted by Raytheon were invalid and declared that the Army is entitled to a GPR license in the Vendor Lists.

48.     Raytheon files the present action in response to the COFD.

## COUNT I

### Declaratory Judgment - Violation of 10 U.S.C. § 2321

49.     Plaintiff repeats, realleges and incorporates by reference each allegation set forth above, as though fully set forth herein.

50.     The Army violated the requirements of 10 U.S.C. § 2321 by failing to follow the statutory procedures for challenging the validity of restrictive markings on technical data submitted to the Government.

51.     10 U.S.C. § 2321(d) permits the Army to "challenge a use or release restriction asserted with respect to technical data by a contractor" by determining that reasonable grounds exist to question the current validity of the asserted restriction and then providing written notice of the challenge to the contractor.  The written notice must state the specific grounds for challenging the asserted restriction, require a response within 60 days justifying the validity of the asserted restriction and state whether evidence of prior validations exists.  A contracting officer may only issue a final decision after a contractor fails to respond, or the contracting officer receives the contractor's justification for the asserted restriction on the use of technical data.  *See* 10 U.S.C. § 2321(g).

52.     The Army failed to follow these statutory requirements and, instead, the contracting officer issued a COFD determining that the Vendor Lists constitute technical data and demanding that Raytheon deliver the Vendor Lists with GPR restrictive markings.

53.     In doing so, the contracting officer failed to provide Raytheon the opportunity to make a data rights assertion, failed to make the required determinations for challenging Raytheon's data rights assertion, and failed to issue the mandatory written notice, thereby violating the requirements of 10 U.S.C. § 2321.

54.     This Court may grant the relief it considers proper, including declaratory and injunctive relief, in any dispute concerning rights in intangible property or other nonmonetary disputes on which a decision of the contracting officer has been issued under the CDA.  28 U.S.C. § 1491(a)(2).

55.     Raytheon, therefore, is entitled to a declaration that the Army failed to comply with the statutorily-prescribed procedures set forth in 10 U.S.C. § 2321, and, consequently, the COFD is invalid.

## COUNT II

### Breach of Contract - Violation of DFARS 252.227-7037

56.     Plaintiff repeats, realleges and incorporates by reference each allegation set forth above, as though fully set forth herein.

57.     The Army breached the Patriot Engineering Services Contracts when the Army disregarded the requirements of 10 U.S.C. § 2321 and DFARS 252.227-7037 by failing to follow the contractually required procedures for challenging the validity of restrictive markings on technical data.

58.     The Patriot Engineering Services Contracts contain the contract clause at DFARS 252.227-7037.

59.     DFARS 252.227-7037(d) provides that before a contracting officer challenges the validity of a restrictive marking, the contracting officer may request that a contractor or subcontractor informally explain the basis for its asserted restrictions and provide supporting documentation, if necessary.  If, after reviewing the information provided by the contractor, the contracting officer determines that (a) reasonable grounds exist to question the current validity of the asserted restriction, and (b) continued adherence to the asserted restriction would make it impracticable to procure the item to which the technical data pertain, the contracting officer may

send a written notice to the contractor formally challenging the validity of the contractor's assertions.

60.     Pursuant to DFARS 252.227-7037(e), if a contracting officer determines that a challenge to a restrictive marking is warranted, then the contracting officer shall send a written challenge notice to the contractor asserting the restrictive markings.  The notice must:

> (i)     State the specific grounds for challenging the asserted restriction;
>
> (ii)    Require a response within sixty (60) days justifying and providing sufficient evidence as to the current validity of the asserted restriction;
>
> (iii)   State that a DoD Contracting Officer's final decision . . . sustaining the validity of a restrictive marking identical to the asserted restriction, within the three-year period preceding the challenge, shall serve as justification for the asserted restriction if the validated restriction was asserted by the same Contractor or subcontractor (or any licensee of such Contractor or subcontractor) to which such notice is being provided; and
>
> (iv)    State that failure to respond to the challenge notice may result in issuance of a final decision pursuant to paragraph (f) of this clause.

61.     A contractor's response seeking to justify the validity of the restrictive marking(s) is, by law, considered to be a contractor "claim" under the CDA pursuant to DFARS 252.227-7037(e)(3).

62.     In this case, the Army breached the requirements of DFARS 252.227-7037 regarding challenges to the validity of restrictive markings because, rather than follow the procedures outlined in DFARS 252.227-7037, the contracting officer issued a COFD determining that the Vendor Lists constitute technical data and demanding that Raytheon deliver the Vendor Lists with GPR restrictive markings.

63.     In doing so, the contracting officer failed to provide Raytheon the opportunity to make a data rights assertion, failed to make the required determinations for challenging Raytheon's data rights assertion, and failed to issue the mandatory written notice, thereby violating the requirements of DFARS 252.227-7037.

64.     Raytheon was harmed as a result of the Army's breach of the requirements of DFARS 252.227-7037 in that the contracting officer's failure to follow the procedures at DFARS 252.227-7037 may result in the improper disclosure of Raytheon's proprietary Vendor Lists to third parties, including Raytheon's competitors.

65.     The COFD, therefore, constitutes a breach of contract and is void.

## COUNT III

### Declaratory Judgment that Raytheon's Data Are Not Technical Data

66.     Plaintiff repeats, realleges and incorporates by reference each allegation set forth above, as though fully set forth herein.

67.     The COFD improperly asserts that the Vendor Lists constitute technical data and, therefore, the proprietary markings that Raytheon placed on the Vendor Lists are invalid, the Government is entitled to a GPR license in the Vendor Lists pursuant to DFARS 252.227-7013(b), and Raytheon must place restrictive markings that provide the Government GPR on the Vendor Lists.

68.     DFARS 252.227-7013(b) governs the allocation of rights with respect to technical data pertaining to items, components, or processes developed under a contract or created under a contract that does not require the development, manufacture, construction, or production of items, components, or processes.

69.     Technical data is defined at DFARS 252.227-7013(a)(15) as "recorded information, regardless of the form or method of the recording, of a scientific or technical nature

(including computer software documentation).  The term does not include computer software or data incidental to contract administration, such as financial and/or management information."

70.     The Vendor Lists at issue in this case are management information, and not technical data.  The Vendor Lists are not "of a scientific or technical nature."  The Vendor Lists reflect enterprise-wide business management decisions that Raytheon made, and continues to make, in selecting and managing suppliers that are important to Raytheon's competitive success and delivery of quality products.  Thus, the Vendor Lists are a summary of Raytheon's proprietary business management decisions.

71.     The Vendor Lists also were submitted in accordance with DI-MGMT-80894A, which "covers data required by the Government to manage, provide visibility, and enforce contractual requirements in the form of record keeping or deliverable products concerning project management milestones, technique, status (excluding financial and technical), milestones, problems, plans, and other data not technically or financially oriented."  DoD Standardization Directory (SD-1), at ix (emphasis added).  According to DI-MGMT-80894A, Vendor Lists are derived from "contract invoices, purchase orders, etc." as a "means for the government to track parts selection, qualification, and identification of parts."  The Vendor Lists, therefore, are management information that is incidental to contract administration.

72.     This Court may grant the relief it considers proper, including declaratory and injunctive relief, in any dispute concerning rights in intangible property or other nonmonetary disputes on which a decision of the contracting officer has been issued under the CDA.  28 U.S.C. § 1491(a)(2).

73.     Accordingly, Raytheon is entitled to a declaration that its Vendor Lists constitute management information, not technical data, and, therefore, are not subject to the technical data rights provisions and marking requirements of DFARS 252.227-7013 and the COFD is void.

## COUNT IV

### Breach of Contract - Improper Treatment of the
### Proprietary Vendor Lists as Technical Data

74.     Plaintiff repeats, realleges and incorporates by reference each allegation set forth above, as though fully set forth herein.

75.     DFARS 252.227-7013 provides the Government certain rights in technical data.

76.     The Vendor Lists are not technical data, as that term is defined in DFARS 252.227-7013(a)(15).

77.     The COFD asserts that the Vendor Lists constitute technical data and, therefore, the Government is entitled a GPR license in the Vendor Lists and Raytheon must replace its allegedly nonconforming markings with the GPR markings specified at DFARS 252.227-7013(h)(2).

78.     The Army breached the Patriot Engineering Services Contracts by incorrectly asserting that the Vendor Lists are technical data and demanding that Raytheon remove its proprietary markings from the Vendor Lists and replace them with the GPR markings specified at DFARS 252.227-7013(h)(2) that will allow the Army potentially to disclose the Vendor Lists to third parties.

79.     Raytheon was harmed by the Army's improper determination that the Vendor Lists are technical data and demand that Raytheon remove its proprietary markings from the Vendor Lists in that the Government demands Raytheon disclose Raytheon's proprietary Vendor Lists to third parties, including Raytheon's competitors.

80.     The COFD, therefore, constitutes a breach of contract and is void.

## COUNT V

### Declaratory Judgment That Even if the Vendor Lists Constitute Technical Data, the Army Is Only Entitled to Limited Rights in the Vendor Lists

81.     Plaintiff repeats, realleges and incorporates by reference each allegation set forth above, as though fully set forth herein.

82.     Even if the Vendor Lists are "technical data," which is not the case, most of the data comprising the Vendor Lists were developed exclusively at private expense and, therefore, the Government could only acquire limited rights in most of the data in the Vendor Lists pursuant to DFARS 252.227-7013(a)(8)(i).

83.     DFARS 252.227-7013(a)(8) defines "developed exclusively at private expense" to mean "development was accomplished entirely with costs charged to indirect cost pools, costs not allocated to a government contract, or any combination thereof."   Under DFARS 252.227-7013(b)(3), the Government obtains only "limited rights" in technical data developed exclusively at private expense and may not disclose technical data subject to a limited rights license to third parties other than "covered Government support contractors," without the contractor's consent.

84.     DFARS 252.227-7013(a)(8)(i) further requires the Government to make private expense determinations at the lowest practicable level, which in this case, requires the Government to determine whether each entry in the Vendor Lists was developed at private expense.

85.     DI-MGMT-80894A instructs contractors to compile source lists from "contractor invoices, purchase orders, etc." as a means for the Government to track parts selection, supplier qualifications, and identification of parts.  In this case, the information set forth in the Vendor Lists primarily was the product of Raytheon's sourcing decisions generated through its proprietary purchasing system processes.  These proprietary decisions reflect, *inter alia*, Raytheon's business

management decisions regarding the selection of suppliers to provide parts and materials to produce products throughout the enterprise.

86.    Most of Raytheon's decisions on sourcing and its enterprise-wide purchasing system primarily are reflected in costs charged to indirect cost pools that are managed by corporate processes, meaning that most of the information in the Vendor Lists was developed at private expense.  Consequently, even if the information in the Vendor Lists is deemed to be technical data, the Government could obtain only limited rights in most that information pursuant to DFARS 252.227-7013(a)(8)(i).

87.    Raytheon, therefore, is entitled to a declaration that, even if the Vendor Lists constitute technical data, most of the information in Vendor Lists was developed exclusively at private expense and the Army is entitled to only limited rights, not GPR, in most of the information in the Vendor Lists.

## **PRAYER FOR RELIEF**

WHEREFORE, Raytheon respectfully requests that the Court enter judgment for Plaintiff in this Complaint and further requests the following relief:

A.    For a declaratory judgment finding that the Army violated 10 U.S.C. § 2321 and, as a result, the COFD is void;

B.    For a determination that the Army breached the Patriot Engineering Services Contracts by failing to follow the contractually required procedures at DFARS 252.227-7037 for challenging Raytheon's proprietary marking assertions and never provided Raytheon the opportunity to make a restrictive marking assertion and the COFD is void;

C.    For a declaratory judgment finding that the Vendor Lists are not technical data and, as a result, not subject to the marking requirements of DFARS 252.227-7013;

D. For a determination that the Army breached the Patriot Engineering Services Contracts by improperly determining the Vendor Lists are technical data and demanding that Raytheon remove its proprietary markings from the Vendor Lists and replace them with GPR markings that will allow the Government potentially to disclose the Vendor Lists to third parties and the COFD is void;

E. For a declaratory judgment finding that even if the Vendor Lists constitute technical data, most of the information in the Vendor Lists were developed exclusively at private expense and, therefore, that the Army does not have a GPR license in the entire Vendor Lists and may not disclose the entire Vendor Lists outside the Government; and

F. For reasonable attorneys' fees and costs to the full extent permitted by statute, including 10 U.S.C. § 2321(i)(2), pursuant to DFARS 252.227-7037(h)(2), or by law or equity and such other relief as the Court deems just and proper.

Respectfully submitted this 17th day of June, 2019.

_s/Steven M. Masiello_

OF COUNSEL:

Gale R. Monahan
Dentons US LLP
1400 Wewatta Street, Suite 700
Denver, CO  80202
Telephone:  (303) 634-4311
Email:  gale.monahan@dentons.com

Steven M. Masiello
Dentons US LLP
1400 Wewatta Street, Suite 700
Denver, CO  80202
Telephone:  (303) 634-4355
Facsimile:  (303) 634-4400
Email:  steve.masiello@dentons.com

ATTORNEYS FOR PLAINTIFF,
RAYTHEON COMPANY

111103076\V-3